That's 50998 Wilson vs. Midland County. Good morning, Chief Judge Richmond. May it please the court. Jabba T. Swashbilly for Appellant Irma Wilson is here today. The defendants prosecuted and convicted Ms. Wilson under what the panel opinion rightly called a quote, utterly bonkers procedural due process violation. Prosecutor Petty was secretly working as a law clerk to Wilson's presiding judge and getting paid for work he did on her case. When Wilson discovered that obvious due process violation, which had everything to do with the nature of the proceeding itself and nothing to do with questions about her guilt or innocence, she timely sued under Section 1983. Now, the defendants say that she's forever barred from invoking that federal cause of action or any other federal cause of action unless she first persuades state officials to grant her relief. If they never do, she can never sue. In most circuits, that argument would be rejected, and rightly so, because nothing in federal law stands in the way of Wilson's presumptively available 1983 claim. Her claim never has and never will collide or conflict with 2254, the federal habeas statute. As the panel here put it, and as six circuits recognize, there can be no collision between 1983 and 2254 if the two never enter the same intersection. And they didn't here because the defendants concealed the due process violation that's at issue here Now, in fairness, that interplay between 1983 and 2254 in these particular circumstances is an unsettled question, as the Supreme Court said in Muhammad v. Close. But a straightforward application of traditional statutory principles, as most recently outlined in Tlefsky and in Nance v. Ward, leads to the conclusion that where 2254 does not collide with 1983, 1983 governs, and that's this case. The defendant's only response is to say that Tlefsky was not a 1983 action, but that's literally all Tlefsky was. So with that statutory argument off the table, the defendants instead ask this court to engraft the elements of a malicious prosecution claim, which arises under the Fourth Amendment, onto Wilson's procedural due process claim, which arises under the Fourteenth Amendment. But Wilson didn't bring a malicious prosecution claim. She brought a procedural due process claim of the sort the Supreme Court says is cognizable in 1983. Gary v. Pipus holds that you have a 1983 claim for a defective proceeding, regardless of questions about guilt or innocence. Edwards v. Balasag explains and makes clear that that claim applies in the criminal context, and that the difference between that claim and those that found in malicious prosecution, which are all about guilt or innocence, is clearly established. Now, the plaintiff in Edwards had to bring that due process claim via 2254 instead of 1983 because he was in state custody. But that statutory conflict does not exist here. And that's what matters. Section 1983 says that Wilson can sue, and no statute says otherwise. She has a complete and present cause of action, and it must proceed. I welcome the court's questions. Why did she not file a state habeas? So the remedy that's available under 1983 is distinct from the remedy that's available there. That habeas proceeding, which happens to be available, does nothing to vindicate the years of harm arising from this procedural defect, and it has nothing to say about the viability of this Gary v. Pipus type due process claim, Your Honor. And I think it's important to also talk about the remedy and the parties in those two independent proceedings. That remedy would seek the vacation of vacating the conviction, and the party on the other side of the V would be the state of Texas. Here, we're not seeking to vacate the sentence. What we're seeking is damages for the constitutional violation, the due process harm, and we're seeking it against an entirely different party, which is Midland County and its employees. So that just underscores that what we're talking about here is an independent proceeding under 1983 for the… But if her conviction was vacated by the state, then you wouldn't be here on En banc on this 1983 issue. You could bring it. Well, I think that skips the antecedent question, Your Honor, which is does her claim have a favorable termination element in and of itself, and it doesn't because it doesn't sound in malicious prosecution. I think there's a good reason that favorable termination has only ever been applied both at common law and under 1983 to malicious prosecution claims. And the reason for that is because the malicious prosecution claims necessarily say that there was no probable cause, and therefore I am necessarily innocent. And so you would have that tension between that claim and the criminal conviction. But where you're bringing a claim that is not concerned with guilt or evidence, you don't have that tension. Let's talk about the heck decision for a minute because it seems to be one of the core principles in that case is that when there's a state conviction in a criminal case of guilt, that we don't set that aside lightly. And what you're suggesting is that someone, let's say, was convicted of a murder and served a 40-year sentence can come out of state prison and relitigate without that conviction being set aside and say, well, I was wrongly convicted. I'm no longer in custody. I want to wipe that off the books, and I want damages from the state for imprisoning me for 40 years. Your Honor, I would want to know what type of claim that plaintiff is making. This exact claim. This claim. At the law court, these facts, only the conviction was for murder. I would also then, I think, want to know when that violation was discovered. After he got out of prison. Yeah, so I think if the violation is discovered after 2254 is no longer available, it is similar to this case, and I think that goes to the nature of the difference between the claims. That plaintiff may only ultimately ever get nominal damages, but the point of Kerry v. Peifus and its lineage is that you have a claim for at least nominal damages regardless of questions about guilt or innocence, and there's a good reason why favorable termination has only ever been applied to malicious prosecution claims. Counsel, I may have misinterpreted the Chief's question, but I thought she said that the hypothetical person was in prison for 40 years. Why would they only get nominal damages under your theory? I thought you could be— I heard four years, but I think— Oh, I'm sorry. Four years, 40 years? Why does it matter? Make it 40. Make it 440. Who cares? Why would they only get nominal damages? That's an extraordinary deprivation of liberty. Why can't they find out the facts later and then bring their claim and say I would like to get paid for every single day I was in prison? And we're still talking about a Kerry v. Peifus type claim? Yeah, make it exactly— A claim like ours? Yeah, just like yours. Like the one that went to the Texas Court of Criminal Appeals. They set aside the conviction on habeas because of this law court situation. Sure. So I think if—let's maybe game it out a little bit, Your Honor. So if the due process violation that's at issue here, if Prosecutor Petty did nothing but, let's say, ministerial acts that didn't impact the way the case proceeded at all, you may just say there's no harm, no foul, and all you get is nominal damages, right? But there is still a second step of the analysis, and Kerry v. Peifus talks about this, which is you may still also be entitled to compensatory harms, but that's a second step. I think the key point here, Your Honor, is if we're having this discussion, then we've already proceeded to agreeing that we have a 1983 claim ab initio, right? We're entitled to bring the claim. You may only get nominal damages, but the quantum of damages question is an entirely separate inquiry. Counsel, the Chief Judge—I'm over here. Chief Judge Richman's question, I thought it said at the beginning that it would wipe it off the books. I thought that's what she said. She said this would not wipe the conviction off the books, would it? It wouldn't. That's right, Your Honor. So that's a different— No, I did not. I thought you said it would. I did not. He was asking what facts apply. I said, well, the facts would be the same as in the court of appeals, except they didn't go to the court of appeals. Okay. In other words, it was this law clerk, these facts, but they did not get habeas relief from the Texas Court of Criminal Appeals. He is saying they could come into our court under Section 1983 and wipe the conviction off and get damages. Well, I don't think he's saying they— are you saying they can wipe the conviction off? No, Your Honor, and I think that comes back— so I just want to be clear. We're talking about— For heck purposes. I'm talking about for heck purposes. Are you wiping the conviction off for heck purposes, or are you not intersecting with heck at all? We are not wiping the conviction off the books, Your Honor. The only way to wipe this conviction off the books is through that independent state proceeding against the state of Texas. What in heck suggests that there is a distinction in the constitutional basis for the claim? I'm reading from heck. The question posed by Section 1983 damages claims that do call into question the lawfulness of conviction or confinement remains open. That's as of heck. The issue with respect to monetary damages is whether the claim is cognizable in 1983 at all. We conclude it is not. Right. The claim there was not cognizable in 1983 for two reasons. Both of the bases were present there. One was that that person was in the Cora Fabius Courtspace and in the 2254 Avenue, so it was cognizable there instead. It would have been completely irrelevant for heck to say that if it challenges the fact of conviction or confinement that you have to have favorable termination via habeas or expunction or governor's pardon or whatever. In other words, it would have been irrelevant for heck to even be concerned about exhaustion of state remedies. I think part of the discussion about favorable termination as an element of the claim that was being brought might have been invited by Justice Souter's concurrence, where he was saying that even in a malicious prosecution claim, the favorable termination element should fall away, and the court said, well, that doesn't make sense when it's an element of the very claim that you're bringing. Again, I just want to make clear that we're not saying that heck resolve this case in our favor. We're saying that it's an open question, as the Supreme Court said, in Muhammad Abi Close, and I think it's also important to note how... Because you had a fabricated evidence claim and the prisoner gets out of prison, and you're saying so habeas is no longer available, can that person file 1983? I think that person would still be subject to the favorable termination because favorable termination is an element of a claim that sounds in malicious prosecution. I understand McDonough said that, but that was for purposes of characterizing what's going on because your client, no less than the client in the fabricated evidence, is claiming something that goes to the procedure of the conviction. They both may be guilty as heck, but they are essentially challenging the procedure. Well, the Supreme Court has said that a fabricated evidence claim, Your Honor, does sound in malicious prosecution, and I would point the court to page 654 of Edwards v. Balasoff where the Supreme Court says that there is a clearly established distinction between claims that are about the substance of the outcome and claims that are about a defective proceeding, and it cites Kerry v. Pipus on that page, and there the reason that the plaintiff had to proceed in 2254 was because he was in state custody. But in the absence of that statutory conflict, then you're just left with the elements-based analysis. I understand that we still need to do that analysis, but the way that it's done is a matter of also a clearly established law. First you ask what is the type of claim that you're bringing and what constitutional amendment does it arise under. If it's a malicious prosecution type claim that arises under the Fourth Amendment, it's going to have that favorable statement. You said earlier there was an antecedent question, which by that I assume you mean whether the heck bar applies in the first place to noncustodial plaintiffs, correct? I frankly don't remember why that was referred to when I said that, but I think that is an antecedent question. Well, it seems like the first question is does the heck favorable termination rule apply to noncustodial plaintiffs? And of course the circuits are deeply, deeply divided, six to five currently on that question, and that division seems to pivot on how they interpret footnote 10 of the decision. So how should we understand footnote 10? Victor, Holden, something in between? So I think the way to understand footnote 10 is as it's written, which is as a response to Justice Souter's claim that even malicious prosecution type claims should shed favorable termination if you're not incusted and you never had 2254 available to you. Ms. Wilson doesn't have a stake in that fight, frankly, because her claim doesn't sound in malicious prosecution. So we don't need to get into the debate between Justice Souter and Justice Scalia. Do you think that ineffective assistance to counsel claims sound in malicious prosecution? Probably not, Your Honor. I can't imagine how they could either. So can every single defendant who gets out of custody bring an ineffective assistance to counsel claim in 1983 without regard to the heck bar? I would want to know who the defendant is, I think. Is there a person that you can sue for ineffective assistance under 1983? I'm not sure that the answer to that is yes. It's exactly the same claim. Listen, I was in jail for 40 years unjustly because my lawyer was terrible. So I'm suing the state that prosecuted me. I'm suing the prosecutor who prosecuted me. I'm suing the judge who prosecuted me. I'm suing anybody I can under 1983 because the trial was unlawful. The ineffectiveness of your counsel, Your Honor, can be imputed to the county defendant, I think, is the simplest answer. Well, your ineffective assistance to counsel is imputed to the state under the Sixth Amendment. That's the whole reason it's a constitutional claim. So why can't you bring a 1983 state suit and just say all of my custody was unlawful? I should never have gone to jail because I had a terrible lawyer, and all of my claims at trial, I got unjustly convicted. And are we agreeing that that is imputed to the state? It has to be. It doesn't apply to the state, Your Honor. I'm not saying you're suing the state. I'm saying you're suing everybody who's involved. You're suing the jailer who held you. You're suing the prosecutor who prosecuted you. You're suing the judge who should have recognized that the lawyer was doing a terrible job. I think this would be governed by simple causation principles, Your Honor. Those defendants did not cause your counsel to be ineffective, so you're going to lose because you don't meet a causation element. If the court were to rethink or overrule Rendell, what sort of diligence requirement should we adopt so as to prevent floodgates from opening and preventing a deluge of the sorts of cases that Judge Alton is asking about? I want to start by saying that this case is not a good case to decide whether to impose a diligence requirement. What are we doing here? Have I wandered into the wrong argument? I thought that we took this case in order to say whether we're going to overrule Rendell in the favorable termination requirement on some theory that the footnote in the HAC is victim. Totally ignoring the holding of HAC, I might add, but I digress. And I thought, and you're saying this case doesn't even pose that question. Is that right? The question of- Do we overrule Rendell in the favorable termination requirement for noncustodial 1983 plaintiffs? It very much does, Your Honor. The question here is, because 2254- I thought you said that because you have a different theory of your 1983 claim and it doesn't even implicate the favorable termination requirement. Right. So there's, I think, two versions of a favorable termination requirement. One is when you're in state custody and, therefore, you're in the 2254 channel. So we're saying that you don't have a 1983 claim yet. The other version, which is the one that comes from common law, is if you are bringing a malicious prosecution type claim, you have that favorable termination element of the claim yourself. Well, I didn't get to you. You were talking about which of the- I don't know how many diligence flavors are on offer, but which one should we take if we overrule Rendell? Sure. So I think all of the- most of the circuits on our side do this right, and they ask, was 2254 ever realistically available to you? It's been a workable standard, Your Honor. Let me ask you another hypothetical. Suppose the plaintiff is a demonstrator and has to pay a fine for an illegal demonstration somewhere, and that's a criminal fine and doesn't go through any state process. Could that person then sue in 1983 for damages for an illegal conviction? I think that claim would invoke the debate between Justice Scalia and Justice Souter because it sounds like that person would be saying that this is a form of malicious prosecution claim, and so we would need to decide whether that favorable termination element drops away there. It's a constitutional claim predicated on the First Amendment. Sure. So in that case, Your Honor, I think- I'm pleased for saying that heck is limited to something that can be, quote, characterized as malicious prosecution. I don't think any of the circuits say that, do they? The Second Circuit sitting on Bonk and Poventude in 2014 said that. Your Honor, they ran through the analysis essentially exactly the same way we do in our brief, and I do want to maybe turn back to the question of where does it say that heck-we know what heck is about. I don't think you need to take my word for it. The Supreme Court itself opened Edwards v. Balasoff. The very first sentence said, and heck, we held that Section 1983 claims, by state prisoners are not cognizable in 1983. But what do you do with McDonough? McDonough is just like heck in Edwards v. Balasoff, Your Honor, because it actually implicates both aspects of heck. The plaintiff there, while being prosecuted, while under indictment, was in the 2254 channel, and then after the acquittal, then he still had a favorable termination element of his claim because it sounded a malicious prosecution. But the full rationale of McDonough is that you have to have favorable termination rather than suing when the injury allegedly occurred because you don't want conflicting judgments between state and federal courts. You do not want to impugn the integrity of the state court processes and essential respect for federalism. How does your theory accommodate any of those concerns? And McDonough, for all practical purposes, was a unanimous opinion, although there was a, quote, dissent. They didn't take any issue with this part of the discussion. Right, so McDonough was explaining why the common law in 1983 had always imposed a favorable termination element on what everybody agreed in that case was a malicious prosecution claim, but that doesn't tell you what you do with claims that don't sound a malicious one. But let's pick one that does. Let's take the ex parte Young case, but let's change one fact. Let's assume that Young did not go to the Texas Court of Criminal Appeals. That's exactly where Ms. Wilson is today, correct? Under that hypothetical. Did not go to the Texas Court of... Yes. Well, yes, but she, meaning, but she wouldn't start in the Texas Court of Criminal Appeals, right? You're saying invoke that statutory... Let's just say, this is exactly, let's take Young's, the Young case, except let's say he did not go to the Texas Court of Criminal Appeals and did not get his conviction vacated. Sure. So he's in the same spot as Ms. Wilson is today, right? Under that hypothetical. Sure. So under your analysis, he could come in just like you're asking us to do and sue under 1983 for the years he spent in prison for murder. His conviction would still stand. Your Honor, he can sue under 1983 for at least nominal damages under care of epictus, and then you turn... I'm sorry. And then you turn to the second part of the analysis, which is, is he entitled to some sort of compensatory harm? And the question that you're asking there is not a question about guilt or innocence. Yes, he is. Go ahead. The question that you're asking there is all about conduct that occurred outside of the courtroom. You're asking, did Petty's involvement actually affect the way this case was litigated? And it might help to maybe just like... You see, that impugns the conviction. That impugns the conviction. And that's what I want you... That's a huge concern, heck, in other cases, that you don't impugn state court convictions. It seems to me that's what Young would be doing if we let him come into suit just like you're asking us to let Ms. Wilson come into suit. You're impugning the state court conviction. Sure, and there's no principle against impugning a conviction in some sort of metasense. The principle is, are you bringing a claim, the elements of which are all about guilt or innocence and therefore going to necessarily conflict the way... That's the way this court characterized favorable termination. Let me ask you another variation on that. What about all the defendants who in the wake of the Young case also sought exoneration because Mr. Petty's misdeeds and were denied relief by the Texas Court of Criminal Appeals? Under your theory, can all of them file 1983 suits? You're asking, yes, because you're asking... They're probably time-barred at this point, but you're asking a different question. No, sir, I mean, the Midland side of them, a bunch of other people were transpired that Petty wasn't in fact at all personally involved in their convictions. The way those cases were decided is actually really important, Your Honor. Let me deal with my hypothetical. Sure. Okay? You have a fellow who's been denied relief, habeas, on the basis of Petty's conduct. He's been denied, you know, recently. Can he come out and sue under 1983? The answer is yes, but I would really appreciate the opportunity to explain. So in those cases, Your Honor, the Texas Court of Criminal Appeals said, yes, there was a due process violation here as a result of Petty's involvement, but we're going to independently review the habeas record and we're going to deny you habeas relief. And I think that underscores why the defendant's theory of this case really reads Carey v. Pifus entirely out of 1983 because you may have a person who is factually guilty and they can never achieve favorable termination as those cases are showing to some extent. But that person, then, can... But that person, the Supreme Court has told us, does have a Section 1983 nominal damages claim under Carey v. Pifus, and that's the question is, do you get into court ab initio? Sorry? That's just a matter of the statute, but yes, Your Honor. Is there any showing that the five or six circuits who have held pets does not extend to cases like this, have had an explosion in ineffectiveness cases or First Amendment cases or other... Is there any statistics or... I didn't see that in any of the amici briefs. You're right that it's not in the record, but our review of the case law does not suggest any sort of explosion like that, Your Honor, and I think there's a few reasons. I think one is that most claims that criminal defendants or people who have been convicted will probably sound in malicious prosecution. They're going to be complaining about guilt or innocence, so they're going to have that favorable termination element, and they can't get into 1983 until they meet it anyway. And they may also be barred by general principles of preclusion if they had an opportunity to litigate this claim or did litigate this claim. Counsel, I thought you just said to Judge Jones that you do have the opportunity to litigate it, you did litigate it, you lost it, and then you can nonetheless vindicate it in 1983. Did I understand your answer to her? Yes, but I would like to go back... Can I just ask one quick question because I want to make sure I hear it? What case in the United States has ever held that, that you can litigate your claim in the state court and lose it and then vindicate it in 1983 in federal court? What case says that? I think the principle that applies, Your Honor, is that Section 1983 claims do not... The availability of Section 1983 does not turn on the existence of some independent state proceeding, and I think it would be helpful to come to the way the Supreme Court recently explained this in Nick v. Scott, where it did this in the takings context, and it said the mere fact that you have an inverse condemnation claim in state court says nothing about when or how you bring your 1983 claim... I'm quite familiar with Nick, and it's obviously not a habeas case, but can I just get an answer to my question? I realize your time is out. Do you have a case anywhere in the United States from any court that has ever said you can bring a claim, lose it in state habeas, and then vindicate the same claim in 1983 in federal court? Has it ever been done? No, Your Honor, but I think that the reason that you would lose that would be based on 1738 and preclusion principles, but if I may... If I could take 30 seconds, Chief Judge Richman, to just come back to my discussion with Judge Jones about the way those individuals are losing in the Texas Court of Criminal Appeals, the Court of Criminal Appeals is saying that they actually did state a due process violation, so I think that those individuals, if they came into 1983, there would actually not be a conflict between that holding of the Texas Court of Criminal Appeals and the claim that they're bringing, because they'd be saying, I actually was vindicated. They said that my due process rights were violated, but they did an independent review of the habeas record and said that they denied me relief anyway. Yeah, that happens all of the time in our court. We have direct criminal appeals. We have state, federal habeas claims that say, yes, your due process rights were violated, but it was harmless ere your conviction stands, but under your argument, in every one of those cases where we said, yeah, due process violations, they can now come in and sue while they're in custody, out of custody, say, I've got a 1983 violation. I'm sorry, under 1983, once I get out of prison, I can sue for that due process violation, because the court said I was violated. I at least get nominal damages. Right, and I think that to hold otherwise, your honor, would be to read Carrie V. Peifus-type claims out of Section 1983. I just don't think that, I don't think we can do that. You know, the Supreme Court has said that you have a claim for a defective proceeding, at least for nominal damages. Yeah, sure, there's an additional inquiry into compensatory harms as well, but the question that we're here to answer today is, do you get into federal court under 1983, as the Second Circuit puts it, ab initio? The answer to that must be yes, based on the way that this inquiry proceeds. No conflict between 2254 and 1983, and no favorable termination element, as a matter of the 1983 claim itself. I'm happy to answer any further questions, if your honors may have them. Thank you. May it please the court, Philip Stavron for the Apple News. I would like to start by pointing out in paragraphs 126 and 127 of Ms. Wilson's complaint. She said, and I quote, but for the blatant due process violations in her criminal trial, Irma would not have been convicted. Paragraph 127 says, that plaintiff has spent more than, this is a quote, has spent more than 20 years for a crime she did not commit. In her en banc brief before this court, the appellant admits that her claim impugns the validity of her criminal conviction. That's on page 17. The heck-holding applies, and the reason it applies is because it does not have a binary, is there a habeas conflict, or can we shoehorn this claim into the elements of common law malicious prosecution? No. What the Supreme Court has said in Heck, and in Spencer, and in McDonough, and in numerous cases that follow, is we look to see whether the claim, and the language is necessarily impugns the validity of a conviction or sentence. If so, then the Section 1983 claim does not accrue. Now how did Heck got there? Heck did not, was not out of thin air. There were five principles that led to Heck's holding. The first holding, I'm sorry, the first principle is that Section 1983 is a species of tort liability. The second one is that we look to common law for an analog for direction, an analog of common law courts. Third is that in common law, you can only get damages for a wrongful conviction through the malicious prosecution claim. The fourth principle was that civil claims were not available to collaterally attack a conviction, and then the fifth one was the long-standing interest in finality and consistency. Given the appellant's clear admission throughout in the allegations and in the briefing, including the en banc brief for this court, that her claim impugns the validity of her conviction, and there can be no dispute about that. In fact, she goes further and says that she was innocent. A Section 1983 claim, however it's formulated, did not accrue. And if there's any doubt about that, we would cite the Edwards case. In the Edwards case, the damages was claimed for deprival of good time credits based on an officer being biased and deceitful, similar to what is being alleged in this case. The court said that the nature of the challenge to the procedure necessarily implied the invalidity of the judgment, and therefore, Heck applied. Interestingly enough, and very important for purposes of footnote 10 in the Heck opinion, there's a concurring opinion in Edwards by none other than Justice Souter, Justice Ginsburg, Justice Breyer, three judges who have written consenting or dissenting opinions, saying that they agree with that. They agree that Edwards' Section 1983 claim versus Bostock's Section 1983 claim was not cognizable, and they differentiate. The purpose of the concurring opinion in Edwards is to differentiate procedural claims that do not impugn, that do not affect the conviction or sentence. Counsel, can we discuss Rendell and whether or not it is in conflict with Muhammad? Because Heck, because Rendell says Heck unequivocally establishes that the favorable termination rule applies to noncustodial litigants when the Supreme Court has said that that custodial issue is unsettled. And so what rule would you, we have to look at Rendell anyway, and we have to actually look at what should be our statutory framework, because we haven't actually articulated it, even though many other circuits have, one way or the other. What should be our statutory framework under your analysis? But when you say statutory framework, do you mean... How we would analyze the question, because we didn't really do that in Rendell, except for that kind of throw-down comment about that, which is not dispositive, according to the Supreme Court. Let me answer the question. I think you're asking, make sure I understand it correctly, about whether or not Muhammad allows the circuits to make an exception from the Heck holding where there's a noncustodial plaintiff. What I would say is that Muhammad says no such thing. Muhammad was a procurium opinion in a footnote in which the court said that there had been justices who expressed concern about whether or not Heck should apply, whether Heck's holding should remain for noncustodial plaintiffs. When the court stated in a footnote that we have had no occasion to sell this issue, they're talking about whether to change the Heck holding. We think that is the most logical and proper reading of that footnote. And I would read that, and the way I reached that conclusion, Your Honor, is in large part because of the Agostini case. In Agostini, the court said that it is up to the Supreme Court to change its own precedent. And interestingly enough, in the Agostini case, they changed their own precedent, citing that there were five justices in procuring and dissenting opinions who had questioned the validity, or the vitality, rather, of the precedents in agri-law. And what the Supreme Court said there is that if a precedent of the court applies, yet appears to be rejected on reasons rejected by other decisions, the Court of Appeals should follow the case, the precedent, leaving to the Supreme Court the prerogative of overruling its own decisions. If you look at the bases, the principles that I laid out that led up to Heck, none of them, not a single one of them, impacts custody or not custody. The reason that custody came into play in Heck is because in applying the holding that the court reached based on those five principles, Mr. Heck, who was Mr. Heck and Mr. Humphrey, whoever was incarcerated, was unable to do that because his claim hadn't accrued. It did not matter for purposes of developing the Heck holding. And the footnote 10, we say, is simply responding to Justice Souter to say, yes, we mean what we said and we said what we mean, that our holding really does extend that far. And if you read the holding and look at the facts of this case, the Section 1983 claim did not accrue. Now, Agostini is important for another reason as well. In Agostini, there was a justice, again, it was Justice Souter, who said no, our First Amendment law, Establishment Clause law, had not changed because a prior decision was a Zobreth decision. Those facts are not the same that we have here. And what Mr. Favarin, yes, if, again, no forecasting, but if the court were inclined to take a fresh look at Rendell and rethink it and join the half a dozen other circuits, what sort of diligence requirement, what sort of guardrails should we adopt? Well, first of all, let me point out, and we presented this in our brief, that there are actually four, maybe five circuits. The 11th Circuit has said that we haven't decided it. So I think it's really split, even 5-5 at this point, but that's probably just a technicality. Getting to the question, I don't think that a diligence standard is consistent with the holding in heck. I think it would fly in the face of the heck holding, particularly under the circumstances here where she has not been diligent because she could have, and perhaps still could, bring a habeas, as has been pointed out in the state court system, obtain a favorable termination of her conviction, her prosecution. And clearly at that point, there would be no question under McDonough, under all the other cases, that she would have the applicable limitations period to bring her claim. So it's hard for me to fashion, or say how a diligence standard could be fashioned when our position, Your Honor, is that it is not consistent, and in fact, we believe it was the First Circuit said that making any distinction from heck for equitable reasons would fly in the face of heck's holding. If I could pose to you the question that Judge Elrod posed to your friends on the other side, which is in those circuits, 5, 6, however you number them, that don't apply the heck favorable termination rule to noncustodial plaintiffs. In those circuits, what has been the real world planet Earth experience in terms of their docket courts in those circuits? Have they experienced a docket deluge of cases brought by noncustodial plaintiffs? I don't have the answer to that question. I don't want to speculate. Okay. My argument is on the legality and the doctrine of it, and since we're talking about those circuits, I'd like to point out, as we did in the brief, that the Second Circuit, the Fourth Circuit, the Sixth Circuit, all the circuits that found or allowed the Section 1903 claim to go forward because the plaintiff was not in custody, all of them rely on Spencer. They call Spencer a victim. Spencer was not even a Section 1903 case. Spencer was a habeas case where the court found that there was no continuing jurisdiction because the plaintiff was no longer in, the person was no longer in custody, and so there had to be collateral consequences. And it was in response to a comment in the majority opinion in Spencer about how we can't have the tail wagging the dog allow the habeas claim to go forward without jurisdiction because there needs to be a favorable termination of the prosecution for there to be a Section 1983 claim. Well, in response to that, we have concurring and dissenting opinions. I don't think there's any way you can reach Spencer to say that Spencer supports a variance veering from the clear holding of Peck, especially when footnote 10 says, yes, it does apply that broadly. And one of the points that I was going to make about the other point about Agostini is that the majority, it was Justice Sotomayor in the Agostini case, said that Supreme Court precedent is necessarily broad. We write our holdings envisioning a whole host of different scenarios. And therefore, precedent at the Supreme Court or plain precedent of Supreme Court decisions, you need to look not only at the case but also the underlying rationale. And the specific quote is, our refusal to limit Zobrest, which was the decision that Justice Souter had said did not change the First Amendment Establishment Clause law, our refusal to limit Zobrest to its facts, despite its rationale, does not, in our view, amount to a misreading of precedent. We would say that applying any noncustodial exception to Peck because some justices, who, by the way, are no longer on the Supreme Court, and those that were, concurred in Edwards, where you have a claim that necessarily impugns the validity of the judgment. But what she was saying is that it would be a misreading of, or what I'm saying, rather, is that it would be a misreading of precedent to say that, well, some justices have expressed that they might rule differently if the case comes before them again. The footnote in Muhammad says, well, we haven't settled it. You know, we have people here that may not agree, but this is a peculiar opinion, so we're not going to comment on it. Does your Heckbar theory that's preventing Ms. Wilson from seeking 1983 damages for her prosecutor having also secretly been her judge, does that turn on the breadth of each state's habeas regime? And if so, is your position that it is available, state habeas is still available to her? Is it available, number one? Must she exhaust and must she prevail? A number of questions you asked me there, so let me try to make sure I answer them all. As far as the facts of this case, Mr. Petty did not prosecute Ms. Wilson. That is clear. He was a law clerk to the judge at the time that was hearing the case, but he did not prosecute, which is a significant distinction. And I'm sorry. Well, I guess she has her 12B6 allegations. We'll see what facts prove. My legal question was whether or not your interpretation of Heckbar turns on the breadth of every state's, okay, and then the second question was that threefold one. Is it available presently to her habeas in Texas? Must she exhaust it and must she prevail? There's no exhaustion requirement, certainly, for Section 1983, but there is a favorable termination requirement based on the nature of the claim that she's bringing. There is that she, I don't know whether she's waiting too long now to bring this Texas habeas claim, but she certainly could. There is no custody requirement to that. The footnote that we put in our brief shows that many of, many or several people who were convicted have sought that remedy. And I want to point out or clarify that the court did not, the court, the Texas Appeals Court, did not say that constitutional violations occurred. They said that the dual employment would be a constitutional violation, but let's see whether or not there was dual employment there. So that answers all my questions at the first one. Let's say you have a state that habeas requires custody and she didn't learn of the due process violation afterwards. I'm getting there. So my answer to that one, Your Honor, is that there are other ways to have a favorable termination of the prosecution. PAC listed four of them. Direct appeal, expunged by executive order, we have that possibility. Declared invalid by a state tribunal, authorized to make the determination, or called into question by a federal court's issuance of habeas corpus. Only one of those involves the custody. The other three, direct appeal, executive order, state tribunal authorized to make such a determination. Now, do all the states have that? I don't know. I've not canvassed all the states. But certainly in this case, Texas does have that. And in fact, as the court may be aware, habeas was granted to Mr. Nye. And so now he has the favorable termination and the right to bring a section 983 claim within that limitation. Mr. Saverin, over here. You mentioned earlier that I thought you said none of the justices who had questioned the favorable termination requirement, and heck, as applied to non-custodial plaintiffs, are on the court anymore. Is that right? Correct. Are there any justices now in the Supreme Court who are on record as circuit judges as disagreeing with that view and saying, no, there is no such thing? Justice Barrett was on the Savery case in the Seventh Circuit, which was en banc, which found that you couldn't read heck to create a non-custodial exception. OK. But I think there's a danger in trying to change the Supreme Court law based on a prediction of how it's supposed to be. Oh, I agree with that. I was just saying, as long as we're counting noses, why don't we count them? That, yes. Yes, sir. That's the answer to that question. Quick question. If the reach of heck, whether it applies to non-custodial plaintiffs, if the reach of heck is, as you say, closed and settled and not open and unsettled, as the court seemed to suggest in Muhammad, why have the various circuits who view it differently than you, why have they not been reversed and summarily so? Why has the Supreme Court not taken up the case? Is that the question? I mean, you say the heck bar's application to non-custodial plaintiffs is closed, it's not open, it is settled, yet there have been five or six or so circuits that have ruled the other way, and I would think the governments in those cases would not be bashful about urging the Supreme Court to summarily reverse those circuits if it's as clear-cut as you say it is. Well, the Supreme Court isn't bashful about letting circuits be split until they decide which is the right way. I don't know, but I did take a deep dive into each of those circuits and their rationale for allowing Section 983 claims to proceed, and all I can say is that our position is that they're inconsistent, they're technically not faithful to applying Supreme Court precedents, even if it is changed by intervening decisions. I mean, that's, I get back to Agostini, and Justice Sotomayor said that the district court and the court of appeals properly, properly in their summary judgment or dismissed the claim, what have you, even though their own precedent now had changed the previous case, that it was now, they were changing it now because lower courts had properly followed the Supreme Court precedent and its underlying rationale and didn't take any issue with that so that was appropriate, even though they didn't change it then. I'm sorry, you can answer this very quickly, I don't mean to take extra time. Doesn't McDonough case cement heck for all practical purposes? Yes, there's no custody there. It was favorable termination, it accrued, and we agree with that, Your Honor. Thank you, counsel. Thank you very much. Thank you. Chief Judge Richman, and may it please the court, Aaron Nielsen on behalf of Texas. I'd like to make three points today. One, Wilson's new process is different theory is squarely foreclosed by the Supreme Court's unanimous decision in Edwards. Two, Hecht's favorable termination requirement is not the product of reconciliation between federal habeas in section 1983. Three, it matters that Texas lets Wilson challenge her conviction post-custody. First, Wilson has no answer for Edwards, which applied Hecht unanimously to a procedural due process claim of bias, the very argument that she makes here. Nor does she have an answer for McDonough that says the heck applies, quote, whenever, that's the quote, a 1983 claim would impugn a conviction, or, critically, that the relevant analogy for such a claim is malicious prosecution. Wilson's theory thus fails on its own terms because she concedes on page seven that whereas here a 1983 claim is most analogous to malicious prosecution, the heck far applies even after custody ends. And to your point, Judge Duncan, this argument is a new argument. It was not presented before. At the Supreme Court, we would say dismiss as if providently granted. This was not the case that was brought to the court, and they're relying on a new theory, which they lose under. Second, the court needs to distinguish between two of the Supreme Court's cases, Pricer and Heck. Pricer's efforts to get out of jail early did require reconciling 1983 with habeas. Heck did not. Heck, the court was clear, was something different. Both the majority and the concurrence recognized that Heck's favorable termination requirement is a product of section 1983 itself. Thus, Heck's footnote 10 is not only not dicta, it is logically compelled by the court's interpretation of section 1983. At the same time, Heck avoids a trap for plaintiffs. Here, as the en banc court of the Seventh Circuit claims with Judge Barrett as part of it, there's a trap because the problem is if you have to, without favorable termination, what's going to happen is the state judgment of conviction is going to have res judicata effect on the next case. So to your point, Judge Elrod, why haven't we seen, I'm not saying we haven't, the explosion of cases? It's because you're going to be barred by collateral estoppel or res judicata in the next case unless you have some sort of favorable termination. That is not a pro-plaintiff rule, as the Seventh Circuit explains. In fact, it's very unfair to plaintiffs if they have a right to accrues and they have no possibility of vindicating it. That's a problem for their theory. Finally, it matters a lot that Texas provides a right to habeas relief post-custody. I point the court to the Supreme Court's decision just last month in De Villiers v. Texas. There, the court says that if you have a state path you use it. We don't have to start creating all sorts of federal law if there is a state path that you can already do. Here, I would say to your point, Judge Willett, we think that tech should just be done. Randall just resolves the question. If there is a diligence requirement, or so to go past the next step, we would point the court to the Ninth Circuit. I'm looking at, this is Martin v. City of Boise. Here, I'm going to quote, Tech bars a 1983 action that would imply the invalidity of a prior conviction if the plaintiff could have sought invalidation of the underlying conviction by a direct appeal or state post-conviction relief but did not do so. Because Texas still allows post-conviction relief, you would not satisfy the Ninth Circuit standard for diligence. So either way, Texas would still prevail here. We don't think that's the right way to go, but if you were to go that path, Texas still wins. Also, think about how much federal common law will have to be created under her rule. You'll have to have federal common law about equitable tolling, about collateral estoppel, about due diligence. All of these are major red flags under DeVilliers. Also, the gamesmanship danger, which we have not really talked about, is significant. Remember, under federal habeas, it has a one-year statute of limitations. So we're not talking about your entire duration of custody. You could just sit for a year and bring a claim under their theory of how heck it's supposed to work. That can't possibly be correct. We welcome the Court's questions. If not, I'm happy to start with... Yes, Judge Higginson. Your point three, so she has state habeas still available to her? Correct, Your Honor. The only question would be whether laches applies. There's not a statute of limitations on this, so there would be a question whether laches applies. We're not the party to that, but yes, there is. It's definitely a path under Texas law. She concedes as much. And I may have misunderstood point two, but if I agree with you that you've identified judicial estoppel as a separate restriction, I don't see that that necessarily buttresses a heck bar. It's just a separate doctrine. Correct, Your Honor. But remember, there's two sides to heck. There is the bar. There's also the accrual rule. When does the claim accrue? So if the claim accrues as soon as you no longer have access to federal habeas, well, if there's still an extant state judgment of conviction, you're going to be barred by that judgment under collateral estoppel or res judicata. Thus, your claim will accrue, but you can't possibly use it. That's the problem the Seventh Circuit recognized with the rule that says as soon as you are out of, so you no longer have access to federal habeas, well, now you can bring the 1983 claim. Well, you're going to lose. Much better for the plaintiff to say, once you have the favorable termination, well, now the claim accrues, and you can bring it. It's also a lot more orderly and more respectful of federalism, but it's better for everybody. The rule that they have benefits essentially no one, and that's, I think, a problem. I'd also point to the circuits that have adopted it. It's not as robust as they say. I went back and said in my case, I'm not even sure that I get to five. I think that the Eleventh Circuit is certainly out. As I look at the Second Circuit, I'm not quite sure that that was impugning the validity of a conviction. So I would say what we have, we have the Fourth Circuit with the dissent, we have the Sixth Circuit, which was an alternative holding, and we have the Tenth Circuit, which says we're going to do this because of the purposes of 1983. It's not a robust body of law on the other side, whereas the most recent case, and if you read anything else, the one I would urge you to read is the Seventh Circuit's en banc decision, which is the most recent one of these. That is, which, by the way, was overwhelming on this point. Cross-ideological, the court says, no, heck means what it says. That's the logical implication of the reasoning of the court's analysis. They also discuss the Mohammed's Quick Note II. They say exactly what we've heard from Midland County today. I think that's correct. Even if I'm wrong about that, you can still just read the analysis of Heck itself, which will lead to that conclusion. So you don't have to decide whether it's Victor or not. Either way, the analysis of Heck leads squarely to that, which, as Judge Jones notes, the court has said in McDonough, that Justice Sotomayor's opinion is essentially unanimous for the court. That's what Heck means. It applies whenever your claim is going to impugn the validity of a judgment. I also think it's important, though, that we talk a little bit about this theory, which was lately introduced into the en banc proceedings, that somehow due process is different. Go back and read the brief in Edwards. It's the exact same argument that lost unanimously in the Supreme Court, complete with cites to carry recifals and nominal damages. Our office went back and we looked at that brief. We're like, oh, that's an interesting argument. It's new. We weren't expecting it. And we went and we read what the Supreme Court said in Edwards, and we saw the brief. It's the same argument. So they're essentially asking the court to adopt an argument that the Supreme Court unanimously rejected, and also an opinion written by Justice Scalia, of course the author of Heck. As to the diligence requirement, again, Texas thinks that you don't need it. That's not correct. But it is essential that if the court does go that path, you need to have a diligence requirement. Their suggestion that, oh, you can save that for another day, well, that's an invitation for a lot of trouble that I don't think the court wants or needs or is appropriate. And I think that the fact that they are so quick to disclaim all of the logical implications of their own position should make this court very wary before going down that path and creating a great deal of federal common law. When Texas already gives her a path to relief, she just won't take it. I would also point the court to Mississippi, which, as we understand it, also does not have a custody requirement. As to Louisiana, the law is, candidly, I'm a little bit less sure. I went back to my office to figure out how exactly it works. I do know that if it's a significant collateral consequences on your life, there's some case law in the Louisiana Supreme Court that suggests that might be grounds. The Louisiana court hasn't, I think, resolved it. That would be a question for Louisiana. But as to Texas, it is unmistakably clear that we offer a path forward and thus we find ourselves in the same situation, as we were earlier this year with DeVilliers, where they asked us, asked the court, asked the Supreme Court, to make up a whole bunch of new federal common law. And the Supreme Court said, why would we do that if Texas already provides you the right that you seek? Thank you, counsel. Thank you, Your Honor. Chief Judge Richmond, I'd like to make three points, if I could. I'd like to start where my friend left off, where he was saying, you know, this state does this, this state does that. And I think this comes back to Judge Higginson's question from before. They're saying that the availability of Section 1983 necessarily turns on the vagaries of state law, which is how the Supreme Court said it doesn't work in Mansfield. And the fact that they happen to call it a state habeas statute in Texas doesn't really change the analysis. First of all, it's not the core of habeas because it applies to noncustodial individuals. So that nomenclature is a little bit misleading. And I think that comes back to my dialogue with Judge Oldham before, about it's not really a concern about habeas, it's a concern about is there some independent proceeding. Every state has some sort of independent proceeding that might in some way map on to a constitutional claim. In Nick, it was inverse condemnation of rankings. In other cases, it's a battery torch versus excessive force. No instance does the availability of 1983 turn on those vagaries of state law. And I want to just quickly talk about DeVilliers. Texas is confused about DeVilliers. The point of DeVilliers was... We are good. Sorry? I may have been also. I think I can help. Let me try to help. So the question in DeVilliers was when there's no federal statutory cause of action like 1983 because you're suing the state instead of a county entity, what do you do? Does the Constitution, must it be self-executing in those circumstances? And the Supreme Court, essentially as a matter of constitutional avoidance, said, well, we don't really need to say yes or no because you can bring the exact same claim for the exact same remedy. Okay, why isn't this claim foreclosed by Edwards? Your friend on the other side argued extensively that that was procedural due process of bias and that's a similar claim and that it was a unanimous Supreme Court decision post-act. Why does that not foreclose your argument? Because that only answers the first part of the analysis, which is, is there a conflict between 2254 and 1983? And in that case, there was with respect to both the due process-sounding claim and the malicious prosecution-sounding claim, so it had to be channeled to 2254. In the absence of that conflict, we are asking whether, as the Supreme Court recently put it in Tleskie, 2254 supplants and is incompatible with 1983 under the circumstances and where you never had 2254 available to you by no fault of your own, then there is no such conflict between the two statutes. And so the shortest answer to the Edwards conundrum, Your Honor, is that the Supreme Court said that these two types of claims are distinct. They both do imply the invalidity of a conviction and that's why if you're in the 2254 avenue, you've got to use that. And so I think we've talked about nose counting and who's on the Supreme Court now and things of that nature. I mean, that's not what we're relying on. We don't rest our argument on the fact that there are six circuits or four. What we're doing is a statutory analysis, and if we want to talk about how current members of the Supreme Court answer questions, they do statutory analysis. And they told us just a year or two ago in Tleskie how to do this statutory analysis. They said you ask does one federal statutory scheme supplant and displace 1983 under the circumstances and you start with the 1983's presumptive availability. Here, there's no conflict and therefore 1983 governs. It's not a complex exercise, frankly, in these circumstances and that's why I think the diligence question is one that we win no matter what kind of diligence requirement you do or do not want to impose because Ms. Wilson diligently brought her 1983 claim and it's diligence with respect to 2254 that all of those other circuits are talking about. They're not talking about diligence with respect to some independent state proceeding. Thank you, Counselor. Thank you. The court will stand recess until tomorrow morning at 9.